IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HEATH NORRIS, ) | |
| ) | |
| Plaintiff, ) | 8:16CV187 |
| ) | |
| v. ) | |
| ) | |
| NEBR. DEPT. OF CORR. SRVCS., ) | **MEMORANDUM** |
| OMAHA CORR. CNTR., SCOTT ) | **AND ORDER** |
| FRAKES, DR. RANDY KOHL, ) | |
| BARBARA LEWEIN, CURT WEES, ) | |
| OMAHA CORR. CNTR. MEDICAL ) | |
| STAFF, including and all other ) | |
| unnamed John and Jane Does known ) | |
| and unknown, D. SMALL, C. ) | |
| SCHMOKER, DR. KATHLEEN ) | |
| OGDEN, M. ANTLEY, M. ) | |
| WESLEY, and JOHN AND JANE ) | |
| DOES, known and unknown ) | |
| employees and/or contractors, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action was filed by plaintiff Heath Norris, a pro se litigant incarcerated at the Omaha Correctional Center ("OCC") in Omaha, Nebraska. The court previously granted Plaintiff permission to proceed in forma pauperis in this action. The court now conducts an initial review of the Complaint (Filing No. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff seeks declaratory, injunctive, and monetary relief against the Nebraska Department of Correctional Services ("NDCS"), the OCC, several administrators and

medical staff members of the NDCS and OCC, and John and Jane Does in their individual and official capacities for deliberate indifference to Plaintiff's serious medical needs, violation of his right to equal protection, and negligence under state law.

The crux of Plaintiff's 14 pages of factual allegations is that following surgery for a broken ankle, and despite the fact that Plaintiff's orthopedic surgeon prescribed post-surgery pain medication[1] to be taken up to four times per day as needed, the defendants would only administer the medication three times per day because his "post-surgery recovery does not rise to the level that warrants the dispensing of your medication over and above three times a day. Nebraska Department of Correctional Services medical professionals (not your surgeon) will have the final say on inmate medication consumption." (Filing No. 1 at CM/ECF p. 15.) Plaintiff complains that the defendants withheld doses of his pain medication that he desperately needed due to his "severe" and "extreme" level of pain; they began weaning Plaintiff off his narcotic pain medication more than a week earlier than his surgeon actually ordered it; and they deprived him of his medication without consulting his ankle surgeon.

In response to Plaintiff's "extreme" nighttime pain caused by missing the fourth daily dose of his pain pills, Plaintiff alleges that defendant Ogden, an OCC physician, told him:

> that he should not expect them to treat him as if he were on the streets as far as medical standards go. She continued, explaining that the surgeon's orders were more of a suggestion than a reality. Dr. Ogden informed the Plaintiff that it was OCC's policy to disregard an outside provider's orders if it conflicts with established pill call schedules [which apparently was only three times per day].

---

[1] Plaintiff alleges that the medication was hydrocodone-acetaminophen. (Filing No. 1 at CM/ECF p. 4.)

(Filing No. 1 at CM/ECF p. 9.)

Plaintiff asserts that withholding his prescribed pain medication constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment; that the NDCS and OCC policy of "refusing to accept orders or prescriptions from outside providers constitutes a prohibition to medical care for inmates in violation of the Equal Protection Clause of the Fourteenth Amendment . . ."; and that the defendants were negligent under state law. (Filing No. 1 at CM/ECF p. 17.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v.*

3

*Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

**A. Immunity**

Plaintiff has sued the NDCS, the OCC, and several administrators and medical staff members of the NDCS and OCC in both their individual and official capacities. Plaintiff seeks monetary and declaratory relief for alleged past violations of federal law, as well as injunctive relief. Thus, the initial question presented is whether the Eleventh Amendment bars these claims.

The Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this

immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

Plaintiff's claims for monetary relief and for a declaration of past constitutional violations against these defendants are barred by Eleventh Amendment sovereign immunity. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars claims against state and its agencies for any kind of relief; Eleventh Amendment bars claims for money against state officials in their official capacities); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (section 1983 provides no cause of action against agents of the state acting in their official capacities; sovereign immunity bars claim against state-agency employees for monetary damages under federal act); *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) ("a declaratory judgment establishing *past* liability of the State is . . . forbidden by the Eleventh Amendment" (italics in original) (citing *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 646 (2002))); *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) ("A declaratory judgment establishing only the **past liability** of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." (bold in original)).

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Plaintiff's claims for monetary and declaratory relief for alleged past violations of federal law against the NDCS, the OCC, and all defendant administrators and medical staff members of the NDCS and OCC in their official capacities are barred by the Eleventh Amendment and must be dismissed.

Further, and as discussed below, Plaintiff's claim for injunctive relief, grounded in equal protection, is apparently related to the defendants' policy of prohibiting him

5

from "receiving similar treatment and care that an ordinary citizen might receive outside of incarceration." (Filing No. 1 at CM/ECF p. 18.) Because this equal protection claim must be dismissed for failure to state a claim upon which relief can be granted, so must Plaintiff's claim for prospective injunctive relief related to this "policy."[2]

## B. Eighth Amendment Claim

To prevail on an Eighth Amendment claim, Plaintiff must prove that the defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008). A

---

[2]In addition, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state, its agencies and instrumentalities, and its employees in their official capacities are not a 'persons' "as that term is used in § 1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991). *See also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). Thus, § 1983 does not create a cause of action against the NDCS, the OCC, and the administrators and medical staff of those entities in their official capacities.

prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

"[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006). "When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, No. 15-2482, ___ F.3d ___, 2016 WL 3563424, at *4 (8th Cir. June 30, 2016) (right to adequate medical treatment was clearly established when pretrial detainee arrived at jail after dental surgery with Vicodin prescription for severe pain and deputies and jail nurse acted with deliberate indifference by ignoring detainee's complaints of pain and requests for treatment). *See also Foulks v. Cole Cty., Mo.*, 991 F.2d 454, 455-57 (8th Cir. 1993) (holding there was liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain, and refused to provide medication they were aware was prescribed); *Majors v. Baldwin*, 456 Fed. App'x 616, 617, 2012 WL 739347 (8th Cir. 2012) (unpublished) (holding that plaintiff had established a deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment); *Motton v. Lancaster Cty. Corr.*, No. 4:07CV3090, 2008 WL 2859061, at *6 (D. Neb. July 21, 2008) (noting that the knowing failure to administer prescribed medicine can constitute deliberate indifference, but to establish constitutional violation, inmate must produce evidence that delay in providing medical treatment had detrimental effect on inmate).[3]

---

[3]*See also Gil v. Reed*, 381 F.3d 649, at 663-64 (7th Cir. 2004) (prison doctor's failure to follow directions of outside specialist raises inference of deliberate indifference); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (prison doctor and nurse's refusal to dispense narcotic pain reliever prescribed by outside surgeon following inmate's surgery "would give rise to liability under section 1983"; validity of medical personnel's explanation for refusal to give prescribed medicine to inmate was "an issue for the jury"); *Medrano v. Smith*, No. 05-1092, 161 Fed. App'x 596,

7

1. **Medical Personnel**

Plaintiff plausibly alleges that the defendants who were medical personnel at the OCC were aware of Plaintiff's medical condition, the surgeon's prescribed post-operative medication, and Plaintiff's extreme level of pain. Despite this knowledge, they refused to administer all doses of Plaintiff's pain medication, as recommended by his surgeon, so as not to disrupt the OCC's "pill call" schedule. This could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against defendants Small, Schmoker, Ogden, Antley, Wesley, and other as-yet unidentified members of the OCC medical staff that had direct involvement in Plaintiff's post-surgery treatment.

---

2006 WL 27711 (7th Cir. Jan. 6, 2006) (prison doctors' failure to exercise any medical judgment by investigating, diagnosing, or treating inmate's increasing pain when doctors knew of prisoner's prior surgeries, in addition to stopping prescriptions authorized by other physicians without explanation, stated claim against prison doctors). *But see Hairston v. McGuire*, 57 F. App'x 788, 789, 2003 WL 157554 (10th Cir. 2003) (no Eighth Amendment claim for deliberate indifference to serious medical needs when prison nurse changed Motrin prescription following inmate's jaw surgery to Tylenol based on inmate's prior diagnosis of Hepatitis C); *Williams v. Bearry*, No. 00-60731, 2001 WL 1085197, at *3 (5th Cir. Sept. 7, 2001) (per curiam) (unpublished) (prison doctor is a primary physician and not required to follow consulting surgeon's exact regimen); *Berry v. Fitts*, No. CIV. A. C-09-3, 2010 WL 345750, at *9 (S.D. Tex. Jan. 22, 2010) (unpublished) (adopting Magistrate Judge's Recommendation) (refusal of prison physician to prescribe Tylenol #3, as prescribed by surgeon, for pain management in advance of unscheduled surgery was "no more than a mere disagreement with the course of treatment provided, and not deliberate indifference"; prison doctor found surgeon's prescription inappropriate because Ibuprofen had worked in past for prisoner, Tylenol #3 is not recommended for prolonged periods of time, especially for patients with history of drug or alcohol addiction, and Ibuprofen could be taken up to three days before as-yet unscheduled surgery).

### 2. Non-Medical Personnel

Plaintiff also names as defendants several NDCS and OCC supervisors and administrators—Scott Frakes, NDCS Director; Dr. Randy Kohl, NDCS Medical Director; Barbara Lewein, OCC Warden; and Curt Wees, OCC Unit Administrator.

"It is well settled that § 1983 does not impose respondeat superior liability." Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (internal quotations omitted).

Here, Plaintiff alleges that defendants Kohl, Lewein, and Wees had direct knowledge of his complaints and medical condition, but did nothing to assist him or ensure he received proper care. Further, he alleges that Frakes is responsible for the operation of the NDCS, its staff, and its contractors. At this stage of the proceedings, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against administrative/supervisory defendants Frakes, Kohl, Lewein, and Wees.

### C. Equal Protection Claim

As to Plaintiff's equal protection claim, he alleges that "[t]he Defendants', NDCS and OCC, policies for refusing to accept orders or prescriptions from outside providers constitutes a prohibition to medical care for inmates in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution" and that the defendants' policy of prohibiting him from "receiving similar treatment and care that an ordinary citizen might receive outside of

incarceration" violates the Fourteenth Amendment. (Filing No. 1 at CM/ECF p. 18.) (Filing No. 1 at CM/ECF p. 17.)

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause essentially directs "that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must establish that he was treated differently from others similarly situated to him. Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998).

Here, Plaintiff has not alleged that he was treated differently from other prisoners similarly situated to him; rather, Plaintiff alleges that the defendants' policy represents a substandard level of medical care than that received by nonprisoners in the outside world. Because "[p]risoners are not similarly situated to nonprisoners," this claim must be dismissed. Scher v. Chief Postal Inspector, 973 F.2d 682, 683-84 (8th Cir. 1992); *see also* Hrbek v. Farrier, 787 F.2d 414, 417 (8th Cir. 1986) (prisoners and nonprisoners are not similarly situated for equal protection purposes).

## IV. STATE-LAW CLAIMS

Plaintiff also raises state-law claims against Defendants for negligence. At this time, the court makes no finding with respect to its jurisdiction over these claims or whether they state a claim upon which relief may be granted. In order to ensure a just and fair resolution of this matter, Plaintiff's state-law claims will be allowed to proceed to service of process along with the Eighth Amendment claim detailed above.

## V. CONCLUSION

In light of the liberal construction afforded to pro se litigants' pleadings, the court finds that Plaintiff has sufficiently alleged an Eighth Amendment claim for

deliberate indifference to Plaintiff's serious medical needs against defendants Frakes, Kohl, Lewein, Wees, Small, Schmoker, Ogden, Antley, and Wesley in their individual capacities, in addition to those as-yet unidentified members of the OCC medical staff (also in their individual capacities) that had direct involvement in Plaintiff's post-surgery treatment. This claim, may proceed to service of process, along with Plaintiff's state negligence claim.

Plaintiff's claims for monetary and declaratory relief for alleged past violations of federal law against the NDCS, the OCC, and the defendant administrators and medical staff members of the NDCS and OCC in their official capacities are barred by the Eleventh Amendment and must be dismissed, as well as Plaintiff's purported equal protection claim and his related request for injunctive relief. These claims may not proceed to service of process.[4]

Accordingly,

IT IS ORDERED:

1. This action may proceed to service of process as to Plaintiff's claims against defendants Frakes, Kohl, Lewein, Wees, Small, Schmoker, Ogden, Antley, and Wesley in their *individual* capacities, in addition to those as-yet unidentified members of the OCC medical staff (also in their individual capacities) that had direct involvement in Plaintiff's post-surgery treatment.

---

[4]To the extent Plaintiff complains about the speed in which his grievances were handled, such allegations do not rise to the level of a constitutional violation. Even the failure to respond to a grievance altogether is not, by itself, a constitutional violation. See *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that prison officials' failure to process inmates' grievances, without more, is not actionable under section 1983).

2. Defendants Nebraska Department of Correctional Services and Omaha Correctional Center are dismissed from this action, as are Plaintiff's *official*-capacity claims against defendants Frakes, Kohl, Lewein, Wees, Small, Schmoker, Ogden, Antley, and Wesley.

3. The clerk of the court is directed to send to Plaintiff a copy of the Complaint, a copy of this Memorandum and Order, and 9 summons forms and 9 USM 285 Forms for service on defendants Frakes, Kohl, Lewein, Wees, Small, Schmoker, Ogden, Antley, and Wesley in their *individual* capacities. (See attached Notice Regarding Service.)

Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 120 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

4. If requested to do so in this matter, the United States Marshal will serve all process in this case without prepayment of fees from Plaintiff. In making such a request, Plaintiff must complete the USM 285 forms and submit them to the clerk of the court, together with the completed summons forms. Without these documents, the United States Marshal will not serve process. Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them to the Marshal for service on Defendants, together with copies of the Complaint. In the event Plaintiff asks the United States Marshal to serve process, the clerk of the court will make copies of the Complaint for service on Defendants.

5. The clerk of the court is directed to set the following pro se case management deadline: November 28, 2016: check for completion of service.

DATED this 22nd day of July, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

**Notice Regarding Federal Rule of Civil Procedure 4**

Federal Rule of Civil Procedure 4 requires that a defendant be served with the complaint and a summons. This is to make sure that the party you are suing has notice of the lawsuit. Federal Rule of Civil Procedure 4(e) governs service of process on an individual (i.e., your individual capacity claims).

In this case, Rule 4(e) means copies of the summons and complaints must be served on the defendants individually.

You may ask the United States Marshal to serve process, as described in the court's order, because you are proceeding in forma pauperis.